MOONEY, Appellant, v. HANNIBAL & ST. JOSEPH RAILROAD COMPANY, Respondent.

1. Justices of the peace have jurisdiction of actions brought against railroad corporations under the twelfth section of the general railroad act. (R. C. 1855, p. 414.)

*Appeal from Macon Circuit Court.*

*Ryland & Son*, *Palmer* and *Burckhart*, for appellant.

I. The justice of the peace had jurisdiction of the action. (Sess. Acts, 1847, p. 157; id. p. 247; Sess. Acts, 1853, p. 321; Sess. Acts, 1855, p. 414; Sess. Acts, 1851, p. 232.)

*Lamb & Lakenan*, for respondent.

I. The circuit court committed no error in dismissing the suit. The justice had no jurisdiction. The defendant was incorporated prior to the passage of the general railroad act of 1855. All railroad corporations existing prior to the passage of said act are exempt from the jurisdiction of justices of the peace except as in that act and in their own charters provided. (R. C. 1855, p. 414, § 38.) The exceptions here

Mooney v. Hannibal & St. Joseph Railroad Co.

meant evidently are the twenty-second section of the general railroad law and the second section of the act to amend the charter of defendant, approved February 23, 1853, each of which sections confers jurisdiction upon justices for certain purposes, but not to try ordinary suits against corporations. At the time of the grant of the charter to defendant justices of the peace had no jurisdiction of any action against any corporation. (R. C. 1845, tit. Justices' Courts, p. ——, § 46.) The first section of the charter does not authorize suits against defendant in justices' courts; nor does it confer additional jurisdiction upon justices.

NAPTON, Judge, delivered the opinion of the court.

This was a suit brought before a justice of the peace by a laborer upon the Hannibal and St. Joseph Railroad against the company, under the twelfth section of the general railroad act. (R. C. 1855, p. 414.) The circuit court held that the justice had no jurisdiction, and this is the only question presented.

The general law, which formerly prohibited suits against corporations before justices of the peace, was repealed by the act of February 17, 1851. The jurisdiction in this case depends, therefore, entirely upon the construction given to the prohibition contained in the thirty-eighth section of the general railroad act. (R. C. 1855, p. 430.) That section exempts railroad corporations from the jurisdiction of justices' courts, except as in that act and in their respective charters may be otherwise provided. The general provision in the charter of the Hannibal and St. Joseph Railroad Company, which authorizes the corporation to sue and be sued in all courts of record and elsewhere, can not be construed any modification of the thirty-eighth section in the railroad law, for the plain reason, that if any force be given to the words "elsewhere," or "all courts whatsoever," the thirty-eighth section is totally destroyed and amounts to nothing. Nor is there any provision in the charter of this company or in the

act incorporating the Columbia and Louisiana Railroad, which is the basis of its charter, nor in any of the amendments passed at subsequent sessions of the legislature, which confers any special jurisdiction on justices of the peace in cases such as the present. This may be readily seen by reference to these acts, which are referred to in the briefs of the counsel and need not be particularly set forth here. We have seen, however, in the case of Fatchell v. The St. Louis & Iron Mountain Railroad Co., 28 Mo. 178, that the fifty-first section of the general railroad law contains a special authority to sue these corporations for certain penalties not exceeding one hundred dollars in justices' courts, and there is also a proceeding to settle controversies between these corporations and individual proprietors concerning materials which may be needed in the construction of the road, which are commenced before justices of the peace under the twenty-second section of the act. The question in this case is, whether the twelfth section of the act, under which this proceeding was had, is another and third exception to the general provision of the thirty-eighth section.

It will be seen that this section does not specify what courts are to have jurisdiction over the proceeding provided for in it. The section does not say that the suits brought by the laborers shall be brought in the circuit court, nor that they shall be brought before justices of the peace. It is a mere matter of implication and inference as to what character of courts was within the contemplation of the act. In the absence, then, of any express declaration of the legislature as to the form designed for such proceedings, we must resort to the general policy of our legislation on this subject, and compare it with the remedies here provided. When this is done, we think the inference is very strong that the legislature designed these suits to be brought before justices' courts. The amount authorized to be sued for will not in any case exceed the jurisdiction of justices of the peace, and in a large majority of cases will hardly exceed half the sum fixed on as the limit of that jurisdiction. A speedy

settlement is also within the contemplation of the act. Only thirty days' wages of a common railroad laborer can be sued for, and only twenty days are allowed within which to notify the company or its agent, and the suit must be commenced within thirty days after notice. The whole controversy is expected to be settled in a few months and in the least expensive manner. The law evidently was looking to justices of the peace as the courts where the suits provided for were to be brought. Indeed, to compel such suits to be brought in the circuit court would, in many cases, where the sum of money involved was very trivial, amount to a virtual denial of any redress at all. If a day laborer on a railroad is compelled to go to the circuit court to recover a few days' wages, the necessary expenses of the litigation will exceed the amount of his recovery, and such a remedy as this is delusive. It only encourages or permits litigation which can do no good to either party litigant, unless it be considered as a gain to settle the abstract question of right or wrong in a dispute.

But when we look to the other side and inquire what benefit is to be gained by the corporation in requiring suits of this description to be brought in the circuit court, the inquiry appears to lead to the same result. Of what advantage can it be to such corporations to be put to the expense of a circuit court litigation in controversies of so trivial a nature?

It has been suggested that these suits might be scattered over a great extent of country, and in this way require the company's agent to hunt up obscure and remote points, and in this way, perhaps, suffer a great many suits to go against them by default. It is not perceived how there can be any more difficulty or expense for the superintendent on a particular section of a road to find out and attend to a suit in the immediate neighborhood of his road before a justice of the peace in the county, than there would be for him to go to the county town and attend the circuit court. It will be seen by reference to the details of the section, that a notice is required to be served upon the agent of the company who

is engaged in superintending the work for the payment of which the suit is authorized.  We see no public policy, therefore, looking either to the interest of the railroad or of the laborer, which could favor a construction of the twelfth section of the railroad law so as to compel all the suits provided for in that section to be brought in the circuit court. There is nothing in the terms of the law to require such a construction, and the intent and spirit of it points altogether another way.  We think the twelfth section, as well as the fifty-first and twenty-second, are to be understood as modifications of the general prohibition of the thirty-eighth section of the general railroad law.

Judgment reversed and case remanded.  The other judges concur.